UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 06182 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| BENJAMIN RAATZ; HAYLEY MULTER | ) | |
| RAATZ; KATHLEEN C. CHAVEZ; | ) | |
| GABRIEL CHAVEZ; 1034 WEST ALTGELD | ) | |
| LLC; ALTGELD PROPERTIES, LLC; | ) | |
| JEFFREY FUNKE; and FUNKE | ) | |
| DESIGN/BUILD, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nautilus Insurance Company brought this diversity suit against Defendants seeking a declaratory judgment that Nautilus has no duty to defend Jeffrey Funke (and the businesses named after him) in a state-court action brought by Benjamin and Hayley Raatz (with counterclaims filed by Kathleen and Gabriel Chavez and a business named after Altgeld Street in Chicago).[1] The parties have filed cross-motions for summary judgment. R. 165 (Nautilus's motion); R. 168, R. 173, R. 178 (responses and cross motions by Defendants). For the reasons explained below, Nautilus's motion [R. 165] is granted, and Defendants' motions are denied.

---

[1]Citation to the record is "R." followed by the docket entry. This Court has diversity jurisdiction under 28 U.S.C. § 1332. The Third Amended Complaint, R. 46, alleged the citizenship of two of the LLC defendants as if they were corporations. R. 46 ¶¶ 6-7. The Court required Nautilus to allege the citizenship of the LLCs' members, *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 267 (7th Cir. 2006). R. 142. In a status report on jurisdiction, R. 147, Nautilus properly established that all of the defendants are citizens of Illinois–and reiterated that Nautilus is a citizen of Arizona—so the Court has jurisdiction over this case.

# I.

The facts are drawn from the parties' Local Rule 56.1 statements, viewing them as necessary in the light most favorable to the non-movant. R. 167 (Nautilus); R. 170 (Altgeld); R. 172 (Raatzes).[2] The defendants can be divided into three groups: "Altgeld" refers to the Altgeld LLCs and the Chavezes; "Funke" refers to Funke individually and his companies; and "the Raatzes" refers to the two individual Raatz defendants.

## A. The State-Court Action

### 1. The State-Court Complaint's Allegations

This case stems from a state court action in the Circuit Court of Cook County: *Raatz v. Chavez et al.,* 07 L 14084. The named defendants in that case include all of the defendants in this case, but the Raatzes did not bring suit directly against Nautilus. R. 167 ¶ 1; R. 167, Exh. A. Altgeld filed a counterclaim against Funke for breach of contract and contribution. *Id.* ¶¶ 14-15.

---

[2]Funke adopted the responses of Altgeld and the Raatzes. R. 178. It is worth noting that several of Nautilus's responses to Defendants' Local Rule 56.1 statements fail to properly dispute proposed findings of fact. *See e.g.,* R. 181 ¶ 41 ("Nautilus denies each and every allegation contained in Paragraph 41. Defendants have entirely misrepresented Ms. Nechamkin's testimony.") Local Rule 56.1(b)(3)(B) requires an opposing party to "in the case of any disagreement" make "specific references to" supporting materials. In this paragraph and several others, *see, e.g.,* ¶¶ 40-45, Nautilus fails to cite to supporting portions of the record, and the Seventh Circuit has "routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions." *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010) (affirming district court's decision to deem admitted proposed findings of fact when opposing party "failed to follow the local rule for making and opposing proposed findings of fact for summary judgment . . . ."). As such, to the extent Nautilus has failed to comply with Rule 56.1 in its opposition to proposed findings of fact, those facts are deemed admitted.

The complaint in that case alleges the following: in July 2006, Altgeld (Kathleen Chavez was acting on its behalf) entered into an agreement with the Raatzes to sell the Raatzes a piece of property on which there would be new construction. *Id.* ¶ 5. Altgeld contracted with Funke to serve as architect and general contractor for the construction. *Id.* On October 12, 2006, the closing date, the Raatzes raised various concerns about incomplete construction. *Id.* As a result, the parties entered into a "Work Completion Agreement" that required deficient work to be completed by a certain date. R. 167-2 ¶ 22. Many of the defects were not corrected by the requisite date, and the Raatzes discovered numerous other defects as they lived in the home after the closing on October 12, 2006. *Id.* ¶¶ 23-24. These defects are memorialized in two expert evaluation reports that were commissioned by the Raatzes: one issued on June 1, 2007, and "a second and more comprehensive report" prepared on or about November 26, 2007. *Id.* ¶ 25. The last inspection that factored into a part of these reports occurred on October 23, 2007. R. 167 ¶ 9. Regarding the June evaluation report, the state-court complaint notes that the defects in that evaluation report "include, but are not limited to" a variety of damages. R. 167-2 ¶ 25. The state-court complaint then alleges that "none of the Defendants have paid or otherwise compensated Plaintiffs for or otherwise remedied the *aforementioned* deficiencies." *Id.* ¶ 28 (emphasis added). The state-court complaint moves on to laying out its various claims, without adding any relevant factual allegations as to the damage to the property. R. 167-2.

### 2. Demands for Repair

On January 16, 2007, the Raatzes sent Funke a letter alleging that Funke's failures to rectify problems "constitute[] a material breach of our agreement," and threatening that "[i]f these items are not completed . . . within the next 30 days, we will bar your workers from our home, retain other firms to complete the items, and bill you for the work done." R. 167 ¶ 17.[3] This was followed by an email from the Raatzes to Funke reiterating their disappointment and noting that "[i]t was only when we got so frustrated and wrote you a threatening letter that you started to pick things up and work on it again." *Id.* ¶ 19. Then, on June 18, 2007, an attorney sent a letter to Funke and Altgeld demanding that they "honor the warranty commitments, complete the work and repair any defects immediately . . . ." *Id.* ¶ 21. The letter included one of the expert evaluation reports outlining various defects in the construction. *Id.* The letter closed with the warning that "[w]hile [the Raatzes] do not want to pursue filing suit . . . they stand ready, willing and able to do so . . . ." *Id.* (emphasis added in statement of facts removed). An additional letter from the Raatzes' attorney was sent on or around July 19, 2007, noting that the Raatzes "have notified [] and made claim against [Altgeld, the Chavezes, Funke, and his company] for various construction or design deficiencies . . . ." *Id.* ¶ 24. Similar letters demanding repair and threatening legal action followed on August 22, 2007 and October 10, 2007. *Id.* ¶¶ 27-30. Notably,

---

[3]The letter was also sent to Altgeld, R. 167 ¶ 17, but this fact is of no consequence, as explained below, because it is only Funke who needs to have knowledge of claims and damages to prohibit insurance coverage.

4

Defendants did not make any other demands before the state court case was filed on December 18, 2007, R. 167-1 at 1.

## B. The Nautilus Insurance Policy

Funke entered into an insurance policy with Nautilus sometime on or before November 20, 2007. R. 167, Exh. R-1 at 3 (the policy was countersigned on that date). The "policy period" for the policy is November 2, 2007 through November 2, 2008. *Id.* There are two parts of the policy that are at the crux of the parties' dispute.

First is a "General Change Endorsement." R. 167, Exh. R-2 at 46. The endorsement affected by the relevant "General Change Endorsement" is an exclusion that was originally a part of the insurance contract for "all work performed prior to 11/02/2007." *Id.* at 27. The General Change Endorsement reads in relevant part that "In consideration of an additional premium of $250.00, it is . . . agreed and understood [that] . . . form CG2134 (01/87) Exclusion - Designated Work Stating 'All work performed prior to 11/02/2007' is deleted from the policy in its entirety." *Id.*

The second crucial part of the insurance agreement is a provision entitled "insuring agreement"—the parties also refer to it as the "known loss provision," but given the forthcoming discussion Illinois's "known loss *doctrine*," the Court will refer to the part of the insurance policy pertaining to known losses as the "insuring agreement." In relevant part, the agreement provides that "[t]his insurance applies . . . only if: * * * (2) [t]he [damage] occurs during the policy period; and (3) [p]rior to the policy period, no insured . . . knew that the [damage] had occurred, in whole or in part. If such an [insured] knew, prior to the policy period, that the [damage] occurred, then

5

any continuation, change or resumption of such [damage] during or after the policy period will be deemed to have been known prior to the policy period." R. 167 ¶ 36. As to when an insured "knows" of damage, "[damage] will be deemed to have been known to have occurred at the earliest time when any insured * * * (2) [r]eceives a written or verbal demand or claim for damages because of the [damage]; or (3) [b]ecomes aware by any other means that [damage] has occurred or has begun to occur. *Id.*[4] In other words, this provision required Nautilus to defend suits based on damage that flows from construction defects which first occurred *after* the inception of the policy. R. 170 ¶ 41.[5]

## II.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

---

[4]Although knowledge of the damages by the insured is an element that must be satisfied before the "insuring agreement" precludes coverage, Defendants do not argue that Funke lacked knowledge of the damages and claims. Instead, Defendants focus their arguments on when the damages at issue in the state-court case occurred.

[5]Interpretation of an insurance contract under Illinois law is a question of law that is, generally speaking, appropriately resolved at summary judgment. *West Suburban Bank of Darien v. Badger Mut. Ins. Co.*, 141 F.3d 720, 723-724 (7th Cir. 1998). Here, there need not be any in-depth analysis and interpretation of the contract, because the language of the contract is not susceptible to multiple meanings, *see Benedict v. Fed. Kemper Life Assurance Co.*, 759 N.E.2d 23, 26-27 (Ill. App. Ct. 2001), and the parties all concede that the interpretation described in the text above applies. R. 180 at 7 (Nautilus); R. 187 at 1-2 (Altgeld); R. 188 at 3-4 (Raatzes). Furthermore, Defendants, believing that Nautilus could not rely on the "insuring agreement" as a basis for this declaratory judgment action, did not argue that there should be a contrary interpretation.

6

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

### III.

Defendants correctly note that there is generally a thumb on the scales in favor of the insured when deciding whether an insurance provider has a duty to defend. R. 187. To determine whether an insurer has a duty to defend, the Court looks to the allegations of the underlying complaint, that is, the complaint against the insured. *U.S. Fiderlity & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991). "If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured . . . ." *Id.* (emphasis in original). Moreover, the insurance policy and underlying complaint must be construed liberally in the favor of the insured. *Id.* As noted above, the interpretation of the insurance policy is not disputed by the parties here, and so this is a relatively straightforward application of the policy's coverage to the factual allegations in the state-court complaint. As explained below, despite the broad duty to defend, and despite liberal construction in favor of the insured, the allegations in the state-court complaint do fall outside of the Nautilus insurance policy, and so Nautilus need not defend. Moreover, even if Nautilus has waived its ability to rely on the "insuring agreement" to justify its declination of the duty to defend, Illinois's known loss doctrine mandates the same conclusion.

## A. Waiver

Defendants' initial argument is that Nautilus cannot rely on the "insuring agreement" to decline coverage because Nautilus has purportedly premised its declaratory judgment action solely on Illinois's "known-loss doctrine." R. 169 ¶ 2. The argument cites to both the structure of the complaint and testimony given by a Nautilus employee. Both arguments fail.

Defendants first point to the complaint in the present case. R. 46. The first 24 paragraphs set out the relevant facts, and then before continuing on, there is a caption entitled, "Grounds for Declaratory Judgment - Known Loss Doctrine." R. 46 at 9. Defendants contend that this evidences Nautilus's intention to rely only on the known loss doctrine, and so Nautilus cannot now rely on the provisions in the "insuring agreement" to decline defense. R. 169 ¶¶ 2-3.

This is too cramped a reading of the complaint and too broad a reading of what works a waiver in litigation. Generally, waiver occurs only when there is a clear and unequivocal relinquishment of a right. *Heller Int'l Corp. v. Sharp*, 974 F.2d 850, 861 (7th Cir. 1992). To be sure, Nautilus's decision to use the heading "Grounds for Declaratory Judgment - Known Loss Doctrine" was unnecessary, but it was just that—a heading—and does not change the fact that Paragraph 24 of the complaint block-quotes the relevant language of the "insuring agreement" on which Nautilus now

relies in its motion for summary judgment. Relying on the heading to find waiver is unwarranted and parses too closely a mere guidepost to read the complaint.[6]

Defendants' second waiver argument relies on the deposition testimony of Nautilus's "Senior Litigation and Coverage Specialist," Amy Nechamkin. R. 169 ¶¶ 4-5. Defendants argue that the witness "testified repeatedly that Nautilus is seeking Declaratory Judgment solely on the basis of the Known Loss Doctirne, and not under any terms of the insurance policy." *Id.* ¶ 4. But that overstates Nechamkin's testimony. For example, when asked to confirm that the known loss doctrine was "the only basis alleged in [the complaint] for declaratory judgment," she responded "well, it does – as stated, yes, but it does include the *insuring agreement* that says, we'll pay sums to which this insurance applies, but we do not have an obligation to defend a suit to which this insurance does not apply." R. 170-1 at 57 (emphasis added).

It is true that, three transcript-lines later, Nechamkin testifies that it is correct that there is no "basis to decline the claim . . . pursuant to any of the policy terms…." R. 170-1 at 57. But that is not the end of the deposition. When asked if the "insuring agreement" could or would apply to this case, Nechamkin answered that it would. *Id.* at 95-96. And when asked if Nautilus has made any claim that the "insuring agreement" would be a basis for denial of coverage, Nechamkin responds: "the answer is in our third amended complaint in which we're relying upon the known loss doctrine

---

[6]The Raatzes' response brief argues that the complaint lacks "any citation" to the known-loss provision, R. 173 at 12, yet Paragraph 24 of the complaint is a block quotation of the known-loss provision.

9

in that document[,] we have not asserted the other ones, any other defenses to coverage." *Id*. at 96. Moreover, in one final effort to pin down Nechamkin, she was asked "to the best of your recollection . . . the only defense to coverage in this case has been . . . the known loss doctrine?" *Id*. at 97. Rather than simply answering "yes," Nechamkin answered "[a]s reflected in the third amended complaint for declaratory judgment." *Id*. This final statement brings the potential grounds for declining coverage back to the third amended complaint, which includes the block-quotation of the relevant part of the "insuring agreement." There was no waiver of that basis to decline coverage.

### B. The "Insuring Agreement" Justifies Declination of Defense

Having resolved the waiver arguments and concluded that Nautilus can rely on the insuring agreement's provisions, it is time to decide whether these provisions do in fact permit Nautilus to decline defense. The answer is yes. The damage caused by the construction and design defects falls outside of the Nautilus policy because all of the alleged damage to the property occurred before November 2, 2007, and Funke had knowledge of the damage and claims at that time.

Indeed, in their initial response briefs, Defendants did not even make any arguments as to the effect of the "insuring agreement" on this case; they put all their eggs in the waiver basket. Later, in their last set of briefs (the replies), Defendants do address the "insuring agreement," but largely give away their case when they concede that "[t]he provisions that have been cited indicate that damages reasonably anticipated and flowing from damages that predated the policy are not covered." R. 187

at 7. Defendants do not argue (nor could they) that Funke lacked notice of the Raatzes claims before the policy period, nor that damages occurring before the policy period are covered by the insurance policy—the unambiguous terms of the insuring agreement foreclose the latter argument. Instead, Defendants argue that Nautilus does not know when the damages alleged in the state-court complaint occurred, and so summary judgment is inappropriate. R. 188 at 8-9. On the contrary, an examination of the state-court complaint, even when construed in the insured's favor, demonstrates that all of the alleged damages occurred before November 2, 2007.

The state-court complaint alleges that, at the closing (on October 12, 2006), work was either incomplete or defective, and it was identified in the Work Completion Agreement. R. 169-2 ¶ 21. The problems were not completed or fixed in a workmanlike manner. *Id.* ¶ 23. Further, additional design and construction defects had been found after the Raatzes moved into the home. *Id.* ¶ 24. The Raatzes commissioned two expert evaluation reports on the deficiencies and defects. *Id.* ¶ 25. The first report "lists several of the . . . defects, deficiencies and issues with the exterior of the house alone." *Id.* These defects and deficiencies include, but are not limited to the enumerated problems outlined in the complaint. *Id.* Several times, the Raatzes requested "the defects and deficiencies be corrected, replaced, or repaired." *Id.* ¶ 26. "[T]*he* violations, construction defects, deficiencies and issues relating to both interior and exterior" were brought to Defendants' attention on and before July 19, 2007. *Id.* (emphasis added). The complaint then alleges that the "aforementioned" deficiencies have not been

11

rectified. *Id.* ¶ 28. Nowhere does the state-court complaint allege that the Raatzes continue to discover new damage, or that they are discovering new deficiencies.[7]

Defendants cite specifically to Paragraph 29 of the state-court complaint for support.[8] That paragraph alleges that as a result of the defective work "Plaintiffs suffered other property damage." R. 167-2 ¶ 29. As with the previous paragraphs, that statement is followed by a representative, but not limiting, list of damaged property. *Id.* But nothing in Paragraph 29 suggests that these are *new* damages, or are any different from "*the* damages" or "the aforementioned damages" referenced throughout the state-court complaint. Defendants' argument requires much more than construction in their favor; it requires a too-strained reading of the complaint. Just as the Court will not strain to find ambiguity in the insurance policies' terms, which are construed in the insured's favor, *State Auto. Mut. Ins. Co. v. Kingsport Dev., LLC*, 846 N.E.2d 974, 980 (Ill. App. Ct. 2006), the Court should not strain to find ambiguity in the state-court complaint.

---

[7]In fact, in the July 19, 2007 letter from the Raatzes' attorneys, the attorneys imply that the Raatzes have found the totality of the problems, and were then engaging in a calculation of the estimated costs to remedy the defects. R. 167, Exh. K at 3. The letter notes that it includes a listing of "both interior and exterior warranty items," and that the Raatzes were in the process of obtaining estimates to rectify the problems identified in the building evaluation report of Alexander & Associates. *Id.* The only reference to future, potential damage is the statement that "water leaking into the house is a serious problem and must be remedied before the weather worsens." *Id.* But the damage from a water leak would flow from the original defect that allowed the water to leak in the first place; it would not be a new defect covered by the policy.

[8]This argument is actually found in the section arguing that the Illinois known-loss doctrine does not preclude coverage, R. 167 at 3, but, as is explained below, the Illinois known-loss doctrine and the "insuring agreement" operate in a very similar way, and so the argument is equally applicable here.

The complaint focuses on a fixed set of damages—"the damages"—that were identified by two expert evaluations (the last home inspection leading to an expert evaluation occurred before November 2, 2007), and those are the damages that the Raatzes complained of to Funke and Altgeld. Indeed, Funke and his subcontractors were denied access to the property by late August 2007. R. 167 at 26. The fact that Nautilus has "no personal knowledge" as to when the damages in the underlying complaint occurred, R. 188 at 9, is irrelevant. What matters are the allegations in the complaint, *U.S. Fidelity & Guar. Co.,* 578 N.E.2d at 930, and the allegations in the complaint can only be read to concern damages incurred before November 2, 2007.

**C.     The Known Loss Doctrine Also Permits Declination of Defense**

There is another ground for finding in Nautilus's favor: the known loss doctrine. This doctrine provides that where an insured knows of a loss or has evidence of a probable loss at the time an insurance policy begins, the loss is not covered by the policy. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1210 (Ill. 1992).

In *Outboard*, the insured alleged that its insurer was required to defend against suits filed by government agencies for water pollution from the insured's facility. *Id.* at 1211. The policy was issued after the insured received an administrative order from the Environmental Protection Agency confirming the contamination. *Id.* The insurer argued, and the Illinois Supreme Court agreed, that the insurer did not have to defend the action because the contamination constituted a known loss, because the insured had knowledge that it was releasing hazardous material into the environment. *Id.* The

13

justification for this rule is simple: insurance is based on contingent risks; if the insured knows or has reason to know of an actual loss when it purchases insurance, there is no longer any mere risk of loss—what would have been a contingent loss is probable or known. *Id.* at 1210. And presumably insurers generally do not insure against known losses.

Defendants make two arguments as to why the known loss doctrine does not apply in this case. First, the Raatzes argue that the known loss doctrine is inapplicable when an insurance policy contains a known-loss provision, R. 173 at 11—like the one in the "insuring agreement." For support, the Raatzes cite one case, from the Southern District of New York discussing New Jersey law. *Travelers Cas. and Surety Co. v. Dormitory Auth. State of N.Y.*, 732 F. Supp.2d 347, 362 (S.D.N.Y. 2010). New Jersey has a common law doctrine that operates like Illinois's known loss doctrine. *Id. Travelers* held that the common law concept of "known-loss" is read into insurance policies to reflect a public-policy judgment that an insured should not be able to purchase insurance for losses already incurred. *Id. Travelers* then held that the common-law concept of "known loss" does not apply when a contract has its own known-loss provision. *Id.* But the Raatzes do not cite any Illinois cases in support of their argument that Illinois would similarly constrain its known loss doctrine. And although the common-law known loss doctrine is similar to the known-loss provision, the doctrine and the provision are not incompatible. The known-loss provision applies specifically to known "property damage," whereas the known loss doctrine applies more generally to known or substantially-probable losses.

14

Defendants' second argument against the known loss doctrine's applicability here is by Altgeld. As noted above, Altgeld argues that Paragraph 29's reference to "other property damage" is a sufficient allegation that damage occurred after the issuance of the insurance policy, and that Nautilus "does not know if all such damages occurred before the inception of the policy." R. 169 at 4; R. 187 at 2-5. But it bears repeating that what Nautilus knew or did not know is irrelevant; what matters are the allegations of the state-court complaint.[9] And, as discussed above, the state-court complaint is susceptible to only one reading, and that is that the Raatzes are seeking compensation for damages incurred or that began before issuance of the insurance policy. If the Raatzes had continued to find new damages and defects in their property, it would have been a simple allegation to make, and the absence of that simple allegation speaks volumes. For the same reasons that the "insuring agreement" supports Nautilus's declination of coverage, so too does the known loss doctrine support noncoverage.

### D.  Removal of the "Prior Work" Exclusion

In a final effort to argue that the known loss doctrine is inapplicable, Defendants contend that removal of a "prior work" exclusion provision creates a question of fact, because the removal suggests that the parties intended to cover known losses, and

---

[9]This applies similarly to Altgeld's argument that Nautilus should be estopped because it failed to investigate the claim or "to inquire about the allegations of the complaint or any other facts of the claim." R. 169 at 6. Even if Nautilus had engaged in inquiries, they would not have affected anything. The allegations of the state court complaint would still be the allegations of the state court complaint, and they would still be what ultimately matters when determining whether Nautilus has a duty to defend.

15

when the parties intend a known loss to be covered, then the known loss doctrine is inapplicable, *Outboard Marine Corp.*, 607 N.E.2d at 1210. R. 169 at 9-11. There are two problems with this argument as a basis to resist summary judgment.

First, this argument would only dispense with the known-loss doctrine basis to decline coverage; it would not disturb the conclusion that the "insuring agreement" precludes coverage and defense. Second, removal of the "prior work" exclusion does not expand the scope of coverage to the degree Defendants argue, such that it can be said that the damages in this case were intended to be covered even though they were known losses. As explained next, the two problems with this argument are related, because it is the policy's "insuring agreement" that makes the removal of the "prior work" exclusion a relatively minor event with minimal effect on coverage.

The removal of the "prior work" provision can be reconciled with the insuring agreement. Assume for a moment that Funke negligently installed a water pipe before November 2, 2007, with no knowledge that he, or one of his employees, had improperly installed the pipe. If that water pipe burst on November 2, 2007, and the "prior work" provision was part of the insurance policy, then Nautilus would have no duty to defend a claim for damages stemming from the water pipe bursting—the "work," the installation of the pipe, would have occurred before November 2, 2007 and would be excluded from the policy by the "prior work" provision. But if the same scenario played out, and the "prior work" provision was not part of the insurance agreement, then Nautilus would have to defend that claim, because the damage would have occurred during the policy period and none of the insureds would have had knowledge of the

16

damage before the policy period began. Thus, the "prior work" provision operated as a broader exclusion of coverage than the limitations in the insuring agreement. Thus, Defendants' argument that the removal of the "prior work" provision created a genuine issue of material fact fails because the coverage limitations outlined in the "insuring agreement" and known loss doctrine continued to apply with full effectiveness.

## IV.

The insuring agreement and the known loss doctrine both independently provide grounds for Nautilus to deny coverage of the state-court claims. Nautilus's motion for summary judgment [R. 165] is granted: it is declared that Nautilus has no duty to defend or to indemnify Defendants against the Raatz lawsuit. Defendants' motions for summary judgment [R. 168, 173, 178] are denied.

ENTERED:

_Edmond E. Chang_
Honorable Edmond E. Chang
United States District Judge

DATE: June 29, 2012